## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA HURST, *et al.*, | ) | CASE NO.:    5:19-cv-00315 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CALIBER HOME LOANS, INC., | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Defendant. | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| | ) | (Resolves Docs. 28 and 29) |

Pending before this Court are competing motions for summary judgment along with timely filed oppositions and replies in support. (Pls.' Mot. for Summ. J., ECF No. 28; Def.'s Opp'n to Pls.' Mot. for Summ. J., ECF No. 35; Reply in Supp. of Pls.' Mot. for Summ. J., ECF No. 39. Def.'s Mot. for Summ. J., ECF No. 29; Pls.' Opp'n to Def.'s Mot. for Summ. J., ECF No. 37; Reply in Supp. of Def.'s Mot. for Summ. J., ECF No. 38.) The question before this Court is whether Defendant Caliber Home Loans, Inc. ("Caliber") violated the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 *et seq.* ("RESPA"), and various provisions of Regulation X, 12 C.F.R. § 1024.1 *et seq.*, during Caliber's handling of a loss mitigation application submitted jointly by Plaintiff Cynthia Hurst ("Hurst") and Plaintiff Thomas Persell ("Persell") (collectively, "Plaintiffs") and in Caliber's filing foreclosure litigation against Plaintiffs. For the following reasons, as fully analyzed herein, Caliber's motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED. Accordingly, this Court specifically holds that Caliber did not violate RESPA or Regulation X in either the handling of Plaintiffs' loss mitigation application or in filing foreclosure litigation against Plaintiffs.

## I.   RELEVANT FACTUAL BACKGROUND

The following relevant facts are undisputed. On April 13, 2017, Plaintiffs financed real property in Massillon, Ohio by executing a promissory note and mortgage, of which Caliber was the original lender and servicer. (Compl. ¶ 23, ECF No. 1; Answer ¶ 23, ECF No. 12. *See also* Pls.' Mot. for Summ. J. Ex. 4, ECF No. 28-4; Pls.' Mot. for Summ. J. Ex. 5, ECF No. 28-5; Def.'s Mot. for Summ. J. Ex. A at 17-36, ECF No. 29-2.) On March 22, 2018, Caliber received documentation from Plaintiffs initiating a loss mitigation application. (Compl. ¶ 24, ECF No. 1; Answer ¶ 24, ECF No. 12. *See also* Pls.' Mot. for Summ. J. Ex. 10, ECF No. 28-10; Def.'s Mot. for Summ. J. Ex. A at 40-82, ECF No. 29-2; Pls.' Mot. for Summ. J. Ex. 28 at 1, ECF No. 28-28.)

On March 23, 2018, Caliber sent a letter to Plaintiffs acknowledging receipt of the loss mitigation application and requesting additional information to complete it. (Def.'s Mot. for Summ. J. Ex. A at 83-87, ECF No. 29-2.)[1] Caliber specified that to complete the loss mitigation application Plaintiffs needed to submit their most recent two months of bank statements, a signed and dated loss mitigation application, their most recent tax returns, signed and dated 4506-T forms, an SSI letter for Persell, and three months of profit and loss statements for Hurst. (*Id.* at 85.) Caliber requested Plaintiffs submit the additional documentation within eight days. (*Id.* at 84.) On March 26, 2018, Caliber received the additional requested information in support of Plaintiffs' loss mitigation application. (Compl. ¶ 25, ECF No. 1; Answer ¶ 25, ECF No. 12. *See also* Def.'s Mot.

---

[1] Plaintiffs attached an exhibit to their motion for summary judgment in support of this undisputed fact. (Pls.' Mot. for Summ. J. Ex. 11, ECF No. 28-11.) The pages of Plaintiffs' submitted exhibit are Bates numbered "CHL-0023," "CHL-0024," "CHL-0025," and "CHL-0026." (*Id.*) Prior to the submission of either of the pending motions for summary judgment, the parties stipulated to the truth, accuracy, and admissibility of certain documents containing specific Bates numbers – the Bates numbers of Plaintiffs' submitted exhibit in support of this undisputed fact were not part of the stipulation. (Stipulation, ECF No. 22.) Without comment regarding the truth, accuracy, or admissibility of Plaintiffs' submitted exhibit, this Court will refer only to Caliber's submitted exhibit supporting this undisputed fact for simplicity and ease of reference as its Bates numbers were part of the stipulation. (*See* Def.'s Mot. for Summ. J. Ex. A at 83-87, ECF No. 29-2; Stipulation, ECF No. 22.)

for Summ. J. Ex. A at 88-170, ECF No. 29-2; Pls.' Mot. for Summ. J. Ex. 27, ECF No. 28-27; Pls.' Mot. for Summ. J. Ex. 28 at 1-3, ECF No. 28-28.)

On March 28, 2018, Caliber sent a letter to Plaintiffs again acknowledging receipt of the loss mitigation application and again requesting additional information to complete it. (Pls.' Mot. for Summ. J. Ex. 12, ECF No. 28-12; Def.'s Mot. for Summ. J. Ex. A at 171-174, ECF No. 29-2.) Caliber specified that to complete the loss mitigation application Plaintiffs needed to submit Persell's most recent SSI letter, another 4506-T form for Persell, and Hurst's most recent letter of explanation signed and dated. (Pls.' Mot. for Summ. J. Ex. 12 at 2, ECF No. 28-12; Def.'s Mot. for Summ. J. Ex. A at 173, ECF No. 29-2.) Caliber requested Plaintiffs submit the additional documentation within eight days. (Pls.' Mot. for Summ. J. Ex. 12 at 1, ECF No. 28-12; Def.'s Mot. for Summ. J. Ex. A at 172, ECF No. 29-2.) On April 2, 2018, Caliber received Hurst's 4506-T, Persell's 4506-T, and an otherwise blank page containing one sentence stating Hurst has "no rental income," Hurst's signature, and the date March 30, 2018. (Pls.' Mot. for Summ. J. Ex. 29, ECF No. 28-29; Def.'s Mot. for Summ. J. Ex. A at 175-178, ECF No. 29-2; Pls.' Mot. for Summ. J. Ex. 28 at 3, ECF No. 28-28.) Notably, Plaintiffs failed to submit Persell's most recent SSI letter as requested by Caliber on March 28, 2018.

On April 3, 2018, Caliber sent a letter to Plaintiffs acknowledging receipt of additional documents supporting Plaintiffs' loss mitigation application with the note that required documents "remain outstanding and must be submitted by the deadline previously provided." (Pls.' Mot. for Summ. J. Ex. 13 at 1-2, ECF No. 28-13; Def.'s Mot. for Summ. J. Ex. A at 179-181, ECF No. 29-2.) On April 5, 2018, Plaintiffs submitted Persell's most recent SSI letter. (Compl. ¶¶ 36-37, ECF No. 1; Answer ¶ 37, ECF No. 12. *See also* Def.'s Mot. for Summ. J. Ex. A at 182-184, ECF No. 29-2; Pls.' Mot. for Summ. J. Ex. 28 at 3, ECF No. 28-28.)

On April 9, 2018, Caliber sent a letter to Plaintiffs acknowledging receipt of the "additional documents necessary to proceed" with review of Plaintiffs' loss mitigation application. (Pls.' Mot for Summ. J. Ex. 14, ECF No. 28-14; Def.'s Mot. for Summ. J. Ex. A at 185-187, ECF No. 29-2.) The letter acknowledged that Plaintiffs' loss mitigation application was considered complete as of April 5, 2018, that Plaintiffs' eligibility for loss mitigation would be evaluated within thirty days of April 5, 2018, and that Caliber would not "commence or initiate the foreclosure process under applicable law" during the evaluation of the loss mitigation application. (Pls.' Mot for Summ. J. Ex. 14 at 1, ECF No. 28-14; Def.'s Mot. for Summ. J. Ex. A at 186, ECF No. 29-2.) The letter also informed Plaintiffs that they would be notified in writing should Caliber require additional documents from them and that any foreclosure protections afforded them during the evaluation of their loss mitigation application "may end" should Caliber not receive the additional documents requested "in the time frame provided." (Pls.' Mot for Summ. J. Ex. 14 at 1, ECF No. 28-14; Def.'s Mot. for Summ. J. Ex. A at 186, ECF No. 29-2.)

On May 1, 2018, Caliber sent two letters to Plaintiffs informing them that although their loss mitigation application was previously considered complete, Caliber required Plaintiffs submit the following documents within thirty days: (1) a letter of explanation from Persell regarding a discrepancy with his SSI income; (2) a letter of explanation from Persell regarding monthly deposits from Edward Jones; (3) Persell's March 2018 bank statements; (4) Persell's April 2018 bank statements; (5) Hurst's March 2018 bank statements; (6) Hurst's April 2018 bank statements; (7) Persell's signed 2017 tax return or filed extension; (8) Hurst's March 2018 profit and loss statement; (9) Hurst's April 2018 profit and loss statement; (10) Persell's 4506-T requesting documentation from 2016 and 2017; and (11) Hurst's 4506-T requesting documentation from 2016 and 2017. (Compl. ¶ 38, ECF No. 1; Answer ¶ 38, ECF No. 12. *See also* Pls.' Mot. for Summ. J.

Ex. 15, ECF No. 28-15; Def.'s Mot. for Summ. J. Ex. A at 188-192, ECF No. 29-2.) On May 4, 2018, Caliber received the following documents from Plaintiffs: (1) a letter of explanation from Persell regarding the discrepancy in his SSI income; (2) Persell's March 2018 bank statement; (3) Persell's April 2018 bank statement; (4) Hurst's March 2018 business bank statement; (5) Hurst's April 2018 business bank statement; (6) a letter claiming Persell did not file 2017 taxes; (7) Persell's 4506-T requesting documentation from 2016 and 2017; and (8) Hurst's 4506-T requesting documentation from 2016 and 2017. (Compl. ¶ 39, ECF No. 1; Answer ¶ 39, ECF No. 12. *See also* Def.'s Mot. for Summ. J. Ex. A at 193-214, ECF No. 29-2; Pls.' Mot. for Summ J. Ex. 28 at 3-4, ECF No. 28-28.) Notably, Plaintiffs failed to provide: (1) a letter of explanation from Persell regarding monthly deposits from Edward Jones; (2) Hurst's March 2018 profit and loss statement; and (3) Hurst's April 2018 profit and loss statement as requested by Caliber on May 1, 2018.

On May 8, 2018, Caliber sent a letter to Plaintiffs acknowledging receipt of "additional documents necessary to proceed with" the loss mitigation review with the note that required documents "remain outstanding and must be submitted by the deadline previously provided." (Pls.' Mot. for Summ. J. Ex. 13 at 3-4, ECF No. 28-13; Def.'s Mot. for Summ. J. Ex. A at 215-217, ECF No. 29-2.) On May 8, 2018, Caliber received: (1) an unsigned note on a blank page which stated: "This letter is to verify the deposit amount of $2000 monthly from retirement account" for Persell; (2) a combined profit and loss statement for March and April 2018 from Hurst. (Def.'s Mot. for Summ. J. Ex. A at 218-221, ECF No. 29-2; Pls.' Mot. for Summ J. Ex. 28 at 4, ECF No. 28-28.) Notably, Plaintiff had still not submitted requested documentation with respect to monthly deposits from Edward Jones to Persell – Caliber had requested specific information regarding the Edward Jones deposits, including whether the deposits were pension income, and if so, an award letter was

needed. (Pls.' Mot. for Summ. J. Ex. 15 at 1, ECF No. 28-15; Def.'s Mot. for Summ. J. Ex. A at 189, ECF No. 29-2.)

On May 9, 2018, Caliber sent a letter to Plaintiffs acknowledging receipt of "additional documents necessary to proceed with" the loss mitigation review with the note that required documents "remain outstanding and must be submitted by the deadline previously provided." (Pls.' Mot. for Summ. J. Ex. 13 at 5-6, ECF No. 28-13; Def.'s Mot. for Summ. J. Ex. A at 222-224, ECF No. 29-2.) On May 29, 2018, Caliber received an additional 4506-T each from Persell and Hurst, but no further communication regarding the Edward Jones income for Persell. (Pls.' Mot. for Summ. J. Ex. 17, ECF No. 28-17; Def.'s Mot. for Summ. J. Ex. A at 225-229, ECF No. 29-2; Pls.' Mot. for Summ. J. Ex. 28 at 4, ECF No. 28-28.)

On May 31, 2018, Caliber sent Plaintiffs two letters. (Pls.' Mot. for Summ. J. Ex. 19, ECF No. 28-19; Pls.' Mot. for Summ. J. Ex. 18, ECF No. 28-18; Def.'s Mot. for Summ. J. Ex. A at 230-237, ECF No. 29-2.) The first letter informed Plaintiffs that Caliber was not able to review Plaintiffs' loss mitigation application because it was incomplete. (Pls.' Mot. for Summ. J. Ex. 19 at 1, ECF No. 28-19; Def.'s Mot. for Summ. J. Ex. A at 231, ECF No. 29-2.) The letter also stated: "Please be advised of the possibility of your Mortgage . . . being foreclosed upon if loss mitigation is unable to be considered due to your failure to fully respond to Caliber's request for additional information." (Pls.' Mot. for Summ. J. Ex. 19 at 1, ECF No. 28-19; Def.'s Mot. for Summ. J. Ex. A at 231, ECF No. 29-2.) The second letter mirrored previous letters sent by Caliber to Plaintiffs acknowledging receipt of the loss mitigation application and requesting additional information to complete it. (Pls.' Mot. for Summ. J. Ex. 18, ECF No. 28-18; Def.'s Mot. for Summ. J. Ex. A at 233-237, ECF No. 29-2. *See also* Def.'s Mot. for Summ. J. Ex. A at 83-87, ECF No. 29-2; Pls.' Mot. for Summ. J. Ex. 12, ECF No. 28-12; Def.'s Mot. for Summ. J. Ex. A at 171-174, ECF No.

29-2.) As it had done before, Caliber specified that to complete the loss mitigation application Plaintiffs needed to submit the most recent two months of bank statements for Persell, the most recent quarter of profit and loss statements for Hurst, and signed and dated 4506-T forms from both Persell and Hurst. (Pls.' Mot. for Summ. J. Ex. 18 at 2, ECF No. 28-18; Def.'s Mot. for Summ. J. Ex. A at 236, ECF No. 29-2.) Caliber requested Plaintiffs submit the additional documentation within thirty days. (Pls.' Mot. for Summ. J. Ex. 18 at 1, ECF No. 28-18; Def.'s Mot. for Summ. J. Ex. A at 235, ECF No. 29-2.) On June 7, 2018, Caliber received the following additional information from Plaintiffs: (1) Hurst's February 2018 profit and loss statement; (2) Persell's 4506-T; and (3) Hurst's 4506-T. (Def.'s Mot. for Summ. J. Ex. A at 238-242, ECF No. 29-2; Pls.' Mot. for Summ. J. Ex. 20, ECF No. 28-20; Pls.' Mot. for Summ. J. Ex. 28 at 4, ECF No. 28-28.) Notably Plaintiffs did not submit the most recent two months of bank statements for Persell or Hurst's most recent quarter of profit and loss statements.

On June 8, 2018, Caliber sent a letter to Plaintiffs acknowledging receipt of additional documents supporting Plaintiffs' loss mitigation application with the note that required documents "remain outstanding and must be submitted by the deadline previously provided." (Pls.' Mot. for Summ. J. Ex. 13 at 7-8, ECF No. 28-13; Def.'s Mot. for Summ. J. Ex. A at 243-245, ECF No. 29-2.)

On June 18, 2018, Caliber filed a foreclosure action against Plaintiffs in the Stark County Court of Common Pleas. (Compl. ¶ 42, ECF No. 1; Answer ¶ 42, ECF No. 12. *See also* Pls.' Mot. for Summ. J. Ex. 21, ECF No. 28-21; Def.'s Mot. for Summ. J. Ex. B, ECF No. 29-3.) On June 19, 2018, Caliber received Persell's May 2018 bank statement, Hurst's May 2018 profit and loss statement, and Hurst's May 2018 business bank statement. (Compl. ¶¶ 40-41, ECF No. 1; Answer ¶ 41, ECF No. 12. *See also* Def.'s Mot. for Summ. J. Ex. A at 246-255, ECF No. 29-2; Pls.' Mot.

for Summ. J. Ex. 28 at 4-5, ECF No. 28-28.) On June 20, 2018, Caliber received, a form 4506-T from Persell and a form 4506-T from Hurst. (Def.'s Mot. for Summ. J. Ex. A at 256-260, ECF No. 29-2; Pls.' Mot. for Summ. J. Ex. 22, ECF No. 28-22.)

On June 25, 2018, Caliber sent a letter to Plaintiffs acknowledging receipt of the loss mitigation application and requesting additional information to complete it. (Pls.' Mot. for Summ. J. Ex. 23, ECF No. 28-23; Def.'s Mot. for Summ. J. Ex. A at 261-265, ECF No. 29-2. *See also* Compl. ¶ 43, ECF No. 1; Answer ¶ 43, ECF No. 12.) Caliber specified that to complete the loss mitigation application, Plaintiffs needed to submit an updated loss mitigation application because their original loss mitigation application had become outdated. (Pls.' Mot. for Summ. J. Ex. 23 at 1, ECF No. 28-23; Def.'s Mot. for Summ. J. Ex. A at 263, ECF No. 29-2.) Caliber also specified that both Plaintiffs needed to submit signed and dated 4506-T forms. (Pls.' Mot. for Summ. J. Ex. 23 at 1, ECF No. 28-23; Def.'s Mot. for Summ. J. Ex. A at 263, ECF No. 29-2.) Caliber requested Plaintiffs submit the additional documentation within thirty days. (Pls.' Mot. for Summ. J. Ex. 23 at 1, ECF No. 28-23; Def.'s Mot. for Summ. J. Ex. A at 263, ECF No. 29-2.) That same day, Persell submitted his signed and dated 4506-T form and Hurst submitted her signed and dated 4506-T form. (Def.'s Mot. for Summ. J. Ex. A at 266-268, ECF No. 29-2; Pls.' Mot. for Summ. J. Ex. 28 at 5, ECF No. 28-28. *See also* Compl. ¶ 44, ECF No. 1; Answer ¶ 44, ECF No. 12.) On June 28, 2018, Caliber received Plaintiffs' updated loss mitigation application. (Def.'s Mot. for Summ. J. Ex. A at 269-275, ECF No. 29-2; Pls.' Mot. for Summ. J. Ex. 28 at 5, ECF No. 28-28.)

On July 2, 2018, Caliber sent a letter to Plaintiffs acknowledging receipt of the "additional documents necessary to proceed" with review of Plaintiffs' loss mitigation application. (Def.'s Mot. for Summ. J. Ex. A at 287-289, ECF No. 29-2.) The letter acknowledged that Plaintiffs' loss mitigation application was considered complete as of June 28, 2018, that Plaintiffs' eligibility for

loss mitigation would be evaluated within thirty days of June 28, 2018, and that Plaintiffs would be notified in writing should Caliber require additional documentation from Plaintiffs. (Def.'s Mot. for Summ. J. Ex. A at 288, ECF No. 29-2.) That same day Caliber received Hurst's June 2018 business bank statement, Hurst's June 2018 profit and loss statement, and Persell's June 2018 bank statement. (Def.'s Mot. for Summ. J. Ex. A at 276-286, ECF No. 29-2; Pls.' Mot. for Summ. J. Ex. 28 at 5, ECF No. 28-28.)

On July 5, 2018, Caliber sent a second letter to Plaintiffs acknowledging receipt of the "additional documents necessary to proceed" with review of Plaintiffs' loss mitigation application. (Def.'s Mot. for Summ. J. Ex. A at 290-292, ECF No. 29-2. *See also* Compl. ¶ 45, ECF No. 1; Answer ¶ 45, ECF No. 12.) The letter acknowledged that Plaintiffs' loss mitigation application was considered complete as of June 28, 2018, that Plaintiffs' eligibility for loss mitigation would be evaluated within thirty days of June 28, 2018, and that Plaintiffs would be notified in writing should Caliber require additional documentation from Plaintiffs. (Def.'s Mot. for Summ. J. Ex. A at 291, ECF No. 29-2.)

On July 12, 2018 the Stark County Court of Common Pleas referred the foreclosure action to a foreclosure mediation program. (Pls.' Mot. for Summ. J. Ex. 25, ECF No. 28-25; Def.'s Mot. for Summ. J. Ex. C, ECF No. 29-4.) The foreclosure mediation program required participation by both Plaintiffs and Caliber "to complete a loan modification packet." (Pls.' Mot. for Summ. J. Ex. 25 at 1-2, ECF No. 28-25; Def.'s Mot. for Summ. J. Ex. C at 2-3, ECF No. 29-4.) With respect to this requirement of the foreclosure mediation program and whether this Court may consider factual allegations, evidence, or communication between the parties which occurred after July 12, 2018, Ohio's Uniform Mediation Act applies. R.C. 2710.01-2710.10. Accordingly, under the Uniform Mediation Act, mediation communications are privileged, not subject to discovery or admissible

in evidence, and a "mediation communication" is defined as "a statement, whether oral, in a record, verbal or nonverbal, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation . . . ." R.C. 2710.01(B) and 2710.03(A). Similarly, the 2016 Local Rules of the Stark County Court of Common Pleas – those applicable at the time of the foreclosure mediation – specify that all communications made during mediation "are confidential and protected from disclosure." Loc.R. 16.09 of the Court of Common Pleas of Stark County. Finally, the Stark County Court of Common Pleas stated in the referral of the foreclosure action to the foreclosure mediation program: "All written or verbal communications of any kind made during the mediation process shall be regarded as confidential and shall not be admissible or used for any purpose." (Pls.' Mot. for Summ. J. Ex. 25 at 3, ECF No. 28-25; Def.'s Mot. for Summ. J. Ex. C at 4, ECF No. 29-4.) Because communication between Plaintiffs and Caliber regarding the loss mitigation application continued throughout, and because of, the foreclosure mediation, this Court will restrict its consideration and analysis to evidence and events that occurred up until July 12, 2018. Any factual allegation, claim, argument, or evidence involving any communications or events associated with the loss mitigation application at issue that occurred after July 12, 2018 will not be considered or analyzed due to the protections afforded activities that occur during mediation.

On February 11, 2019, Plaintiffs commenced the action pending before this Court against Caliber. (Compl., ECF No. 1.) In Count One of their complaint, Plaintiffs allege Caliber committed the following violations of RESPA and Regulation X: (1) failure to exercise reasonable diligence in obtaining documents and information to complete Plaintiffs' loss mitigation application in violation of 12 C.F.R. § 1024.41(b)(1); (2) failure to provide Plaintiffs with the correct notices regarding the receipt of documents, the receipt of the loss mitigation application itself, and the

identification of which additional documents Plaintiffs needed to submit to complete the loss mitigation application in violation of 12 C.F.R. § 1024.41(b)(2)(i)(B); (3) failure to provide Plaintiffs with notice of a reasonable date by which Plaintiffs were required to submit additional documents to complete the loss mitigation application in violation of 12 C.F.R. § 1024.41(b)(2)(ii); (4) failure to evaluate Plaintiffs' complete loss mitigation application for all available loss mitigation options within thirty days of receiving the complete loss mitigation application in violation of 12 C.F.R. § 1024.41(c)(1)(i); (5) failure to provide Plaintiffs with notice of offered loss mitigation options within thirty days of receiving the complete loss mitigation application in violation of 12 C.F.R. § 1024.41(c)(1)(ii); (6) avoidance of the required evaluation of Plaintiffs' complete loss mitigation application by requesting documents already received or impossible to obtain in violation of 12 C.F.R. § 1024.41(c)(2)(i); (7) failure to provide Plaintiffs with notice that their loss mitigation application was complete within five days of receipt of the complete loss mitigation application in violation of 12 C.F.R. § 1024.41(c)(3)(i); and (8) filing a foreclosure action against Plaintiffs while the loss mitigation application was either complete or facially complete in violation of 12 C.F.R. § 1024.41(f)(2). (Compl. ¶¶ 74-75, ECF No. 1.)

In Count Two of their complaint, Plaintiffs allege Caliber violated Ohio's Consumer Sales Practices Act, R.C. 1345.01, *et seq.* Each count will be fully analyzed herein.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) sets forth that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). This Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

Once the movant's burden is met, the burden shifts to the non-moving party to "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992). Of note, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)) (internal quotation marks omitted) (*emphasis* in original).

Material facts are those "that might affect the outcome of the suit under the governing law," while other irrelevant or unnecessary factual disputes do not affect the summary judgment analysis. *Anderson*, 477 U.S. at 248. Additionally, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). When making these determinations, this Court cannot engage in any "'jury functions' such as making credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson*, 477 U.S. at 255). However, any "inferences to be

drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587-88 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)) (internal quotation marks omitted). Accordingly, "the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 243 (syllabus).

## B. Real Estate Settlement Procedures Act and Regulation X

Plaintiffs allege Caliber violated RESPA and various sections of Regulation X by mishandling their loss mitigation application and by filing a foreclosure action against them. To begin, "RESPA is a consumer protection statute that regulates the real estate settlement process." *Malcolm v. Seterus, Inc.*, Case No. 5:18-cv-01937, 2020 U.S. Dist. LEXIS 50397, at *7 (N.D. Ohio Mar. 24, 2020) (quoting *Necak v. Select Portfolio Servicing, Inc.*, 1:17-cv-1473, 2019 U.S. Dist. LEXIS 71147, at *5 (N.D. Ohio Apr. 26, 2019)) (internal quotation marks omitted). "Although the 'settlement process' targeted by the statute was originally limited to the negotiation and execution of mortgage contracts, the scope of the statute's provisions was expanded in 1990 to encompass loan servicing." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (quoting *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012)) (internal quotation marks omitted).

Given this expansion, pursuant to § 1022(b) of the Dodd-Frank Act, 12 U.S.C. § 5512(b), and RESPA, the Consumer Financial Protection Bureau promulgated Mortgage Servicing Rules, which are part of Regulation X. *Cooper v. Fay Servicing, LLC*, 115 F. Supp. 3d 900, 903 n.6 (S.D. Ohio 2015). *See also* 12 C.F.R. § 1024.1; 12 C.F.R. §§ 1024.30-1024.41. With respect to mortgage servicing, "Regulation X imposes certain obligations on a loan servicer with respect to loss mitigation generally and the processing of a borrower's loan modification application." *Necak*,

2019 U.S. Dist. LEXIS 71147, at *10. Borrowers may enforce the provisions of Regulation X pursuant to section 6(f) of RESPA, 12 U.S.C. § 2605(f). *Cooper*, 115 F. Supp. 3d at 903 n.6. *See also* 12 C.F.R. § 1024.41(a).

Under Regulation X, when a servicer receives a loss mitigation application the servicer is required to promptly "review the loss mitigation application to determine" whether it is complete. 12 C.F.R. § 1024.41(b)(2)(i)(A). More specifically, within five days of receiving a loss mitigation application, the servicer must notify the borrower, in writing, that the loss mitigation application was received and whether it was determined to be complete or incomplete. 12 C.F.R. § 1024.41(b)(2)(i)(B). A complete loss mitigation application is one "with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

If the loss mitigation application is incomplete, the "servicer shall exercise reasonable diligence in obtaining documents and information to complete" it. 12 C.F.R. § 1024.41(b)(1). In that vein, the written notification that a loss mitigation application was received incomplete must include "the additional documents and information the borrower must submit to make the loss mitigation application complete" and "a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete." 12 C.F.R. §§ 1024.41(b)(2)(i)(B); 1042.41(b)(2)(ii).

When the "borrower submits all the missing documents and information as stated" in the written notification that the loss mitigation application was received incomplete and "no additional information is requested in such notice," the loss mitigation application is "considered facially complete." 12 C.F.R. § 1024.41(c)(2)(iv). *See also Necak*, 2019 U.S. Dist. LEXIS 71147, at *19 ("A loss mitigation application is considered 'facially complete' when a borrower submits all

additional information as requested even if the servicer later discovers additional information is needed"). Within five days of receiving this facially complete loss mitigation application, the servicer must provide the borrower written notice that informs the borrower the loss mitigation application is considered complete, on which date the servicer received the complete loss mitigation application, that the servicer expects to evaluate the complete loss mitigation application within thirty days of receipt, that the borrower is "entitled to certain foreclosure protections because the servicer has received the complete application," and that the servicer may request additional information from the borrower and provide the borrower with reasonable opportunity to submit the requested information with the caveat that "foreclosure protections could end if the servicer does not receive the information as requested." 12 C.F.R. § 1024.41(c)(3)(i). "If the servicer later discovers that additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete . . . until the borrower is given a reasonable opportunity to complete the application." 12 C.F.R. § 1024.41(c)(2)(iv).

Finally, "[i]f a borrower submits a complete loss mitigation application . . . before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing" unless specific events occur. 12 C.F.R. § 1024.41(f)(2). Facially complete loss mitigation applications are considered complete for the purposes of 12 C.F.R. § 1024.41(f)(2) foreclosure protections during the "reasonable opportunity" borrowers are afforded to submit the additional or corrected information requested by the servicer to complete the loss mitigation application. 12 C.F.R. § 1024.41(c)(2)(iv).

The parties do not dispute that Plaintiffs are "borrowers," Caliber is a "servicer," and Plaintiffs submitted a "loss mitigation application" pursuant to the statutory and common-law definitions

associated with these terms pursuant to RESPA and Regulation X. This Court will proceed with that understanding and analyze the various provisions of Regulation X Plaintiffs allege Caliber violated.

     1.  *Reasonable Diligence – 12 C.F.R. § 1024.41(b)(1)*

Plaintiffs allege Caliber violated 12 C.F.R. § 1024.41(b)(1) by "[f]ailing to exercise reasonable diligence in obtaining documents and information to complete [Plaintiffs'] Loss Mitigation Application." (Compl. ¶ 75(g), ECF No. 1.) While servicers are afforded "latitude in determining what information is needed in evaluating applications," Regulation X requires servicers exercise reasonable diligence in obtaining that information. *Grutsch v. Wells Fargo Bank, N.A.*, No. 2:15-cv-2583, 2017 U.S. Dist. LEXIS 42429, at *18 (S.D. Ohio Mar. 23, 2017). *See also* 12 C.F.R. § 1024.41(b)(1). Although Regulation X does not define "reasonable diligence," a servicer is said to exercise reasonable diligence by promptly reviewing a loss mitigation application and if it is found incomplete, notifying the borrower, in writing, of "the additional documents and information the borrower must submit to make the loss mitigation application complete." *See Schoen v. Bank of Am., N.A.*, No. 2:17-cv-648, 2019 U.S. Dist. LEXIS 23460, at *20 (S.D. Ohio Feb. 13, 2019); *Washington v. Green Tree Servicing LLC*, 2017 U.S. Dist. LEXIS 69330, at* 19 (S.D. Ohio May 5, 2017); 12 C.F.R. § 1024.41(b)(2)(i)(B). On the other hand, "a servicer may fail to exercise reasonable diligence if it repeatedly requests documents it already possesses or documents that it knows or should know are not required to complete the borrower's application." *Schoen*, 2019 U.S. Dist. LEXIS 23460 at *19-20 (quoting *Benner v. Wells Fargo Bank, N.A.*, No. 2:16-cv-00467, 2018 U.S. Dist. LEXIS 52716, at *30-32 (D. Me. Mar. 29, 2018)) (internal quotation marks omitted).

Plaintiffs argue Caliber failed to exercise reasonable diligence when it provided Hurst with conflicting information, particularly with respect to the 4506-T forms. (Pls. Mot. for Summ. J. 15-16, ECF No. 28.) In looking at the 4506-T forms specifically, however, no reasonable juror could find that Caliber failed to exercise reasonable diligence by requesting properly executed and legible 4506-T forms from Plaintiffs, even when the forms were requested repeatedly because each time Plaintiffs submitted the 4506-T forms there was an issue with completion or legibility.

In Plaintiffs' initial loss mitigation application, received March 22, 2018, they each submitted a 4506-T form dated March 21, 2018. (Def.'s Mot. for Summ. J. Ex. A at 74-75, ECF No. 29-2.) On March 26, 2018, Plaintiffs submitted the 4506-T forms dated March 21, 2018 with a modification – Persell and Hurst each checked the box affirming their reading of the form's attestation clause. (*Id.* at 148-149.) On April 2, 2018, Plaintiffs submitted the previously modified 4506-T forms dated March 21, 2018 with additional modifications – Persell's 4506-T form now reflected his address and indicated he was requesting a Form 1040 return transcript while Hurst's 4506-T form now reflected she was requesting a Form 1040 return transcript. (*Id.* at 176-177.) On May 4, 2018, Plaintiffs submitted the previously modified 4506-T forms dated March 21, 2018 with an additional modification – Persell and Hurst each added a request for documentation from 2017, except Hurst's submitted 4506-T form no longer had the box affirming her reading of the form's attestation clause checked. (*Id.* at 213-214.)

On May 29, 2018, Plaintiffs resubmitted the 4506-T forms dated March 21, 2018 with all the modifications previously made after a Caliber representative informed Hurst the forms needed resubmitted with the box affirming reading of the attestation clause checked. (*Id.* at 226-229. *See also* Pls.' Mot. for Summ. J. Ex. 16 at 20180529.) On June 7, 2018, Plaintiffs resubmitted the 4506-T forms dated March 21, 2018 with all the modifications previously made after a Caliber

representative informed Hurst the most recently submitted forms were improperly scanned and illegible. (Def.'s Mot. for Summ. J. Ex. A at 241-242, ECF No. 29-2. *See also* Pls.' Mot. for Summ. J. Ex. 16 at 20180606.) Finally, on June 20, 2018 Plaintiffs submitted new 4506-T forms signed and dated June 19, 2018 after a Caliber representative informed Hurst the most recently submitted forms were improperly scanned and, because they were dated March 21, 2018, would soon expire as all documents received by Caliber must be dated within 90 days of receipt. (Def.'s Mot. for Summ. J. Ex. A at 257-260, ECF No. 29-2. *See also* Pls.' Mot. for Summ. J. Ex. 16 at 20180619.)

This detailed summary of the 4506-T forms submitted by Plaintiffs does not demonstrate that Caliber repeatedly requested documents that were already in its possession. In fact, each time Plaintiffs submitted the 4506-T forms either the forms reflected a modification from the previous submission, or the forms had to be resubmitted due to illegibility of previous submissions. Furthermore, Plaintiffs have neither argued nor presented legal support to demonstrate 4506-T forms are not required to complete a loss mitigation application.

Plaintiffs take issue with Caliber requesting the 4506-T forms to be dated within ninety days of receipt, citing the form itself, which provides: "**Note:** This form must be received by IRS within 120 days of the signature date." (*See, e.g.*, Def.'s Mot. for Summ. J. Ex. A at 74-75, ECF No. 29-2.) Ostensibly, Plaintiffs argue that they should not have needed to resubmit the forms on June 20, 2018, and Caliber's request that they do so demonstrated a lack of reasonable diligence. However, in the June 19, 2018 phone call, the Caliber representative was clear that the 4506-T forms needed resubmitted because the previously submitted forms were improperly scanned. (Pls.' Mot. for Summ. J. Ex. 16 at 20180619.) He also suggested that Plaintiffs provide updated forms to avoid the expiration of said forms occurring while the loss mitigation application was being reviewed – indicative that the date on the forms was not the reason for rejection at the time, but could be a

reason for rejection in the near future. (*Id.*) Finally, the 4506-T form also contains the following instruction: "**Caution:** Do not sign this form unless all applicable lines have been completed." (*See, e.g.*, Def.'s Mot. for Summ. J. Ex. A at 74-75, ECF No. 29-2.) In direct defiance of this instruction, Plaintiffs continually modified 4506-T forms that were previously signed and dated March 21, 2018. This Court cannot reconcile Plaintiffs' attempt to paint Caliber poorly for not strictly following the IRS's acknowledgement that it would accept a form dated within 120 days when Plaintiffs themselves repeatedly failed to follow the instruction written directly on the form regarding how to properly complete the form.

As a final note, Plaintiffs fail to specifically point to any other instance of Caliber requesting information that was already in its possession or documents that were not necessary to complete Plaintiffs loss mitigation application in support of their claim. Plaintiffs take issue with Caliber requesting "different or additional documents," but Caliber is within its rights to request additional information from Plaintiffs in seeking to complete Plaintiffs loss mitigation application and this activity does not demonstrate a lack of reasonable diligence. (Pls.' Mot. for Summ. J. 16, ECF No. 28.) In sum, the facts lay bare that Caliber neither repeatedly requested documents that were already in its possession nor requested documents that were not necessary to complete Plaintiffs' loss mitigation application. Accordingly, no reasonable juror could find for Plaintiffs regarding their claim that Caliber acted within reasonable diligence in violation of 12 C.F.R. § 1024.41(b)(1). Because no reasonable juror could find for Plaintiffs, Caliber's motion for summary judgment on this claim is GRANTED and Plaintiffs' motion for summary judgment on this claim is DENIED.

2. *General Adequacy of Notices and Reasonable Deadlines – 12 C.F.R. §§ 1024.41(b)(2)(i)(B); 1024.41(b)(2)(ii)*

Plaintiffs allege Caliber violated 12 C.F.R. § 1024.41(b)(2)(i)(B) by "[r]epeatedly failing to notify [Plaintiffs] of the receipt of their Loss Mitigation Application and submitted documents"

and by "[r]epeatedly failing to notify [Plaintiffs] as to what documents were needed to complete their Loss Mitigation Application." (Compl. ¶¶ 75(h)-(i), ECF No. 1.) Plaintiffs also allege Caliber violated 12 C.F.R. § 1024.41(b)(2)(ii) by "[r]epeatedly failing to notify [Plaintiffs] of a reasonable date by which they should submit any documents needed to complete their Loss Mitigation Application." (Compl. ¶ 75(j), ECF No. 1.)

Plaintiffs first argue Caliber sent generic letters which "failed to identify the additional information needed to complete" Plaintiffs' loss mitigation application in violation of 12 C.F.R. § 1024.41(b)(2)(i)(B). (Pls.' Mot. for Summ. J. 18, ECF No. 28.) The letters at issue were sent by Caliber to Plaintiffs on April 3, 2018, May 8, 2018, May 9, 2018, and June 8, 2018.

Regulation X defines "loss mitigation application" as "an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option." 12 C.F.R. § 1024.31. Within five days of receiving a loss mitigation application, a servicer must notify the borrower, in writing, that the loss mitigation application was received and whether it was determined to be complete or incomplete. 12 C.F.R. § 1024.41(b)(2)(i)(B). If determined to be incomplete, the written notification must include "the additional documents and information the borrower must submit to make the loss mitigation application complete" and "a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete." 12 C.F.R. §§ 1024.41(b)(2)(i)(B); 1042.41(b)(2)(ii). While "[a] loss mitigation application is to be considered expansively," additional documents a borrower submits to complete a loss mitigation application are not themselves loss mitigation applications triggering the communication requirements of 12 C.F.R. §§ 1024.41(b)(2)(i)(B). *Kavanagh v. Specialized Loan Servicing, LLC*, No. 3:17CV892, 2020 U.S. Dist. LEXIS 46255, at *17-20 (N.D. Ohio Mar. 17, 2020).

In this case, there is no dispute that Caliber received Plaintiffs' loss mitigation application on March 22, 2018, and Caliber, in writing, acknowledged receipt and requested additional information within eight days on March 23, 2018. Between March 23, 2018 and April 2, 2018, Plaintiffs submitted some, but not all, of the additional information Caliber requested. Caliber's April 3, 2018 letter notified Plaintiffs they received the additional information with the reminder that documents remained outstanding. Between Caliber's proper acknowledgment of the loss mitigation application and April 3, 2018 letter, Plaintiffs did not submit an additional loss mitigation application, but rather documents required to complete their loss mitigation application. Therefore, the communication requirements of 12 C.F.R. §§ 1024.41(b)(2)(i)(B) and 1042.41(b)(2)(ii) were not triggered. In other words, the April 3, 2018 letter did not violate Regulation X.

This analysis applies to the May 8, 2018, May 9, 2018, and June 8, 2018 letters as well. Each of these letters was sent to Plaintiffs after Caliber had, in writing, requested additional information from Plaintiffs within a specific timeframe, and Plaintiffs had submitted some, but not all, of the additional information Caliber requested. Plaintiffs' submissions of additional documents required to complete their loss mitigation application were not, themselves, loss mitigation applications requiring the type of communication specified in 12 C.F.R. §§ 1024.41(b)(2)(i)(B) and 1042.41(b)(2)(ii). Accordingly, these letters also did not violate Regulation X.

Plaintiffs next argue that the notices Caliber sent to Plaintiffs "failed to adequately describe the information it required." (Pls.' Mot. for Summ. J. 19, ECF No. 28.) Notices that fail to advise borrowers what information must be submitted to complete the loss mitigation application are not notices that "state the additional documents and information the borrower must submit to make the loss mitigation application complete." *See Kavanagh*, 2020 U.S. Dist. LEXIS 46255, at *24;

12 C.F.R. § 1024.41(b)(2)(i)(B). However, the record is clear that when Caliber required additional documentation, it detailed, in writing, which additional or corrected documentation was needed and by which individual. Caliber specified what needed explained in letters of explanation, that the 4506-T forms were repeatedly rejected and needed corrected, and which months' bank statements and profit and loss statements were needed.

In truth, Plaintiffs' argument seemingly revolves around the 4506-T forms once again. This Court has already discussed in detail that Plaintiffs' failure to submit complete and legible forms caused the repeated rejections. In other words, Plaintiffs repeatedly submitted improper forms, and Caliber repeatedly rejected them and requested proper 4506-T forms to complete the loss mitigation application. In this Court's view, Plaintiffs argument that Caliber violated 12 C.F.R. § 1024.41(b)(2)(i)(B) by failing to detail the multiple, miscellaneous failings of Plaintiffs' 4506-T forms over many months implies imposing a requirement on Caliber that it step-wise explain to those who submit a loss mitigation application how to properly complete each necessary document, even if the document itself contains instructions. Regulation X does not require this level of detailed involvement by a servicer, and neither will this Court.

Accordingly, given the above findings, this Court concludes that no reasonable juror could find that Caliber violated 12 C.F.R. §§ 1024.41(b)(2)(i)(B) or 1024.41(b)(2)(ii). Caliber properly and timely responded when it received a loss mitigation application from Plaintiffs. The generic letters Plaintiffs take issue with were not in response to a loss mitigation application, but rather were in response to additional documentation provided by Plaintiffs supporting their loss mitigation application, which does not trigger the communication requirements of 12 C.F.R. § 1024.41(b)(2)(i)(B). Additionally, Caliber's written communications with Plaintiffs appropriately specified and adequately described which additional or corrected documents Caliber needed to

complete Plaintiffs' loss mitigation application. Because no reasonable juror could find for Plaintiffs, Caliber's motion for summary judgment on these claims is GRANTED and Plaintiffs' motion for summary judgment on these claims is DENIED.

   3.  *Notice for Complete Loss Mitigation Application – 12 C.F.R. § 1024.41(c)(3)(i)*

   Plaintiffs allege Caliber violated 12 C.F.R. § 1024.41(c)(3)(i) by "[r]epeatedly failing to send [Plaintiffs] a notice of complete application within 5 days after [Caliber] received [Plaintiffs'] complete loss mitigation applications." (Compl. ¶ 75(o), ECF No. 1.) This section of Regulation X, 12 C.F.R. § 1024.41(c)(3)(i), tests the sufficiency of a written notice sent to a borrower after the servicer receives a facially complete loss mitigation application. A loss mitigation application is facially complete when a borrower has submitted all the missing documents and information the servicer requested in response to receiving an incomplete loss mitigation application. *See* 12 C.F.R. § 1024.41(b)(2)(i)(B) and 12 C.F.R. § 1024.41(c)(2)(iv). Within five days of receiving a facially complete loss mitigation application, the servicer must notify the borrower, in writing, that the loss mitigation application is considered complete, on which date the servicer received the complete loss mitigation application, that the servicer expects to evaluate the complete application within thirty days of receipt, that the borrower is "entitled to certain foreclosure protections because the servicer has received the complete application," and that the servicer may request additional information from the borrower and provide the borrower with reasonable opportunity to submit the requested information with the caveat that "foreclosure protections could end if the servicer does not receive the information as requested." 12 C.F.R. § 1024.41(c)(3)(i). "If the servicer later discovers that additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete . . . until the borrower is given a

reasonable opportunity to complete the application." 12 C.F.R. § 1024.41(c)(2)(iv). In short, 12 C.F.R. § 1024.41(c)(3)(i) sets forth what information must be included in the written notification by the servicer that a facially complete loss mitigation application was received while 12 C.F.R. § 1024.41(c)(2)(iv) defines a facially complete loss mitigation application and affords foreclosure protections to facially complete loss mitigation applications for a reasonable time.

Accordingly, Plaintiffs claim that Caliber violated 12 C.F.R. § 1024.41(c)(3)(i) may only look to the sufficiency of Caliber's written notices, not any foreclosure protections or the timing of the foreclosure action against Plaintiffs. This Court finds that Caliber's written notices were proper. Plaintiffs' loss mitigation application was only facially complete on two occasions: on April 5, 2018 and June 28, 2018. Upon receipt of the April 5, 2018 facially complete loss mitigation application, Caliber sent a letter to Plaintiffs notifying them that the loss mitigation application was considered complete as of April 5, 2018, that Plaintiffs' eligibility for loss mitigation would be evaluated within thirty days of April 5, 2018, that Caliber would not begin foreclosure against Plaintiffs under applicable law while evaluating the loss mitigation application, and that Plaintiffs would be notified in writing should Caliber require more information from them with the caveat that any foreclosure protections afforded them during the evaluation process may end if Caliber did not receive the additionally requested information within a specific time frame. This written notification directly follows the requirements of 12 C.F.R. § 1024.41(c)(3)(i).

Upon receipt of the June 28, 2018 facially complete loss mitigation application, Caliber sent a letter to Plaintiffs notifying them that the loss mitigation application was considered complete as of June 28, 2018, that Plaintiffs' eligibility for loss mitigation would be evaluated within thirty days of June 28, 2018, and that Plaintiffs would be notified in writing should Caliber require additional documents from Plaintiffs. This letter did not include information regarding foreclosure

protections because the foreclosure action against Plaintiffs had already been initiated. Because foreclosure protections were not applicable at the time of this written notification, it also directly follows the requirements of 12 C.F.R. § 1024.41(c)(3)(i).

Because this Court finds that Caliber did not violate the requirements of 12 C.F.R. § 1024.41(c)(3)(i) when it received facially complete loss mitigation applications from Plaintiffs, and, therefore, no reasonable juror could find for Plaintiffs, Caliber's request for summary judgment on this claim is GRANTED and Plaintiffs' request for summary judgment on this claim is DENIED.

### 4. *Filing of Foreclosure Action – 12 C.F.R. § 1024.41(f)(2)*

Plaintiffs allege Caliber violated 12 C.F.R. § 1024.41(f)(2) when it "filed a foreclosure action against [Plaintiffs] after their Loss Mitigation Application was complete or facially complete." (Compl. ¶ 74, ECF No. 1.) Plaintiffs argue that because Caliber considered their loss mitigation application complete as of April 5, 2018, Caliber was prohibited from filing the foreclosure action against them until Caliber either notified Plaintiffs they were ineligible for a loss mitigation option, or Plaintiffs rejected all loss mitigation options offered by Caliber, or Plaintiffs failed to perform under an agreement on a loss mitigation option. (Pls.' Mot. for Summ. J. 13-14, ECF No. 28 (quoting 12 C.F.R. § 1024.41(f)(2)(i)-(iii)).) While Plaintiffs are correct that complete loss mitigation applications are afforded these specific protections against foreclosure, Plaintiffs' loss mitigation application was never complete prior to June 18, 2018.

Caliber originally received Plaintiffs' loss mitigation application, determined it to be incomplete, and notified Plaintiffs, in writing, which documents it needed to complete Plaintiffs' loss mitigation application. After Plaintiffs submitted all the additionally required documentation, Plaintiffs' loss mitigation application was facially complete. *See* 12 C.F.R. § 1024.41(c)(2)(iv).

Caliber was, therefore, required to provide notice to Plaintiffs that the loss mitigation application was considered complete and, given that status, certain foreclosure protections applied. *See* 12 C.F.R. §§ 1024.41(c)(2)(iv); 12 C.F.R. § 1024.41(c)(3)(i). Caliber did just that. When Caliber later discovered it required additional information from Plaintiffs, it sent a letter to Plaintiffs. The written letter, dated May 1, 2018, requested the additional information Caliber needed, provided Plaintiffs with a reasonable time of thirty days to supply the information, and continued to consider Plaintiffs' loss mitigation application as complete during that thirty-day period to afford Plaintiffs foreclosure protections. *See* 12 C.F.R. §§ 1024.41(c)(2)(iv); 1024.41(f)(2).

There is no genuine issue of material fact that Plaintiffs did not comply with Caliber's request for additional information. The May 1, 2018 letter was clear that Caliber requested a letter of explanation from Persell regarding monthly deposits from Edward Jones – Caliber specifically asked, "what is that? Is that pension income? If so, we need award letter." (Pls.' Mot. for Summ. J. Ex. 15 at 1, ECF No. 28-15; Def.'s Mot. for Summ. J. Ex. A at 189, ECF No. 29-2.) Plaintiffs failed to provide a letter of explanation, or to even answer Caliber's simple questions, regarding a monthly deposit to Persell from Edward Jones. An unsigned blank page, devoid of letterhead or any detail besides one sentence purportedly serving "to verify the deposit amount of $2000 monthly from retirement account" does not, objectively, fulfill Caliber's request for information.

When the reasonable thirty-day window passed without Plaintiffs providing all the additional information Caliber requested, the loss mitigation application was no longer facially complete and foreclosure protections were no longer applicable. The loss mitigation application became incomplete as of May 31, 2018, and Caliber notified Plaintiffs, in writing on that day, that their loss mitigation application was considered incomplete and which documents it needed to complete Plaintiffs' loss mitigation application as required by 12 C.F.R. § 1024.41(b)(2)(i)(B). As of June

18, 2018, Plaintiffs did not submit the additionally requested information to make their loss mitigation application facially complete again.

Although 12 C.F.R. § 1024.41(f)(2) "generally prohibits a servicer from filing for foreclosure if a complete loss mitigation application is pending," a complete, or even facially complete, loss mitigation application was not pending in this matter at the time of the filing of the foreclosure action. *See Malcolm v. Seterus, Inc.*, No. 5:18-CV-01937, 2020 U.S. Dist. LEXIS 50397 at * 8 (N.D. Ohio Mar. 24, 2020). Because an incomplete loss mitigation application does not carry foreclosure protections, the foreclosure action filed on June 18, 2018 was not improper. Therefore, because no reasonable juror could find for Plaintiffs, Caliber's motion for summary judgment on this claim is GRANTED and Plaintiffs' motion for summary judgment on this claim is DENIED.

5.   *Evaluation for and Notice of Loss Mitigation Options – 12 C.F.R. § 1024.41(c)(1)(i)-(ii)*

Plaintiffs allege Caliber violated 12 C.F.R. § 1024.41(c)(1)(i) by "[r]epeatedly failing to evaluate [Plaintiffs] for loss mitigation options within 30 days after receiving [Plaintiffs'] complete loss mitigation applications" and by "[r]epeatedly failing to evaluate [Plaintiffs] for all loss mitigation options available to them." (Compl. ¶ 75(k)-(l), ECF No. 1.) Plaintiffs additionally allege Caliber violated 12 C.F.R. § 1024.41(c)(1)(ii) by "[r]epeatedly failing to send [Plaintiffs] notice in writing stating [Caliber's] determination or which loss mitigation options it would offer within 30 days after receiving [Plaintiffs'] loss mitigation applications." (Compl. ¶ 75(m), ECF No. 1.) Caliber argues that because Plaintiffs' loss mitigation application was never complete for any thirty-day period, no reasonable juror could find for Plaintiffs on these claims. (Mem. in Supp. of Def.'s Mot. for Summ. J. 2, 16, ECF No. 29-1.) This Court agrees.

Within thirty days of receiving a complete loss mitigation application, the servicer must "[e]valuate the borrower for all loss mitigation options available to the borrower" and "[p]rovide

the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower." 12 C.F.R. §§ 1024.41(c)(1)(i)-(ii). A complete loss mitigation application is one "with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

However, Plaintiffs' loss mitigation application was never complete prior to July 12, 2018 – the time period this Court may consider – it was only ever facially complete as thoroughly discussed and analyzed throughout this Memorandum of Opinion. Accordingly, no reasonable juror could find that Caliber violated 12 C.F.R. §§ 1024.41(c)(1)(i)-(ii) because Plaintiffs' loss mitigation application did not meet the required "complete" status for evaluation. Therefore, Caliber's motion for summary judgment on this claim is GRANTED and Plaintiffs' motion for summary judgment on this claim is DENIED.

### C.  Ohio Consumer Sales Practices Act

Plaintiffs' complaint included a claim under the Ohio Consumer Sales Practices Act. (Compl. ¶¶ 82-99, ECF No. 1.) Plaintiffs subsequently informed this Court that they no longer wished to pursue this claim. (Mot. to Amend 1, ECF No. 16.) Caliber moved for summary judgment on the Ohio Consumer Sales Practices Act claim arguing there is no dispute Plaintiffs withdrew and abandoned the claim. (Mem. in Supp. of Def.'s Mot. for Summ. J. 11, ECF No. 29-1.) This Court agrees that there is no dispute Plaintiffs withdrew or abandoned their Ohio Consumer Sales Practices Act. Therefore, Caliber's request for summary judgment on this claim is GRANTED.

### III.  AMENDED COMPLAINT

On July 1, 2019, Plaintiffs filed a motion for leave to amend their complaint. (Mot. to Amend, ECF No. 16.) In their motion Plaintiffs indicated they wished to amend their complaint to clarify

why they ceased paying their mortgage, to clarify their RESPA claims after receiving documents in discovery, and to simplify the case by removing their state law claim. (*Id.* at 3.) Plaintiffs were clear that their amended complaint did not "add any additional parties or counts" to the matter. (*Id.*) Plaintiffs also provided the amended complaint "does not change the substance of the claims against Caliber . . . does not alter the substance of the original allegations, does not change the theory of liability, and does not expand allegations to reach new and unrelated misconduct." (*Id.* at 5.) Caliber opposed Plaintiffs' request to amend their complaint arguing the amendment would be futile and prejudicial. (Opp'n to Mot. to Amend 3-4, ECF No. 18.)

Plaintiffs' desired factual amendments contained in the proposed amended complaint have been fully considered through evidentiary submissions supporting the pending motions for summary judgment. Given Plaintiffs' admission that their proposed amendments do not add parties or claims, and do not alter the existing claims, theories, or allegations, this Court finds it has fully addressed any additional material Plaintiffs wished to include in their complaint throughout this Memorandum of Opinion. Therefore, Plaintiffs' Motion to Amend is DENIED AS MOOT.

## IV. CONCLUSION

For all the foregoing reasons, Caliber's motion for summary judgment is GRANTED. (Def.'s Mot. for Summ. J., ECF No. 29.) Plaintiffs' motion for summary judgment is DENIED. (Pls.' Mot. for Summ. J., ECF No. 28.) This Court specifically holds that Caliber did not violate RESPA or various provisions of Regulation X.

IT IS SO ORDERED.

DATE: March 19, 2021        /s/ John R. Adams
                                         Judge John R. Adams
                                         UNITED STATES DISTRICT COURT